State v. Vanderbilt.

---

THE STATE *vs.* JOSIAH P. VANDERBILT and HENRY DUCKWORTH.

1. An indictment under the statute of this state, (*Nix. Dig.* 170, § 53,) for obtaining property by false pretences, need not charge that any false token or counterfeit letter or writing was used; a verbal pretence, sufficient to impose upon the individual to whom it is made, with an intent to cheat and defraud, and which may induce him to part with his property or give credit, is an offence within the statute, *provided* the pretences used are not absurd and incredible in themselves.

2. The term "false pretence" does not involve the use of a visible token.

3. The judge instructed the jury "that the pretence need not be proved in the precise words laid in the indictment; that entire verbal accuracy was not required, but that the *idea* conveyed by the defendants and that set forth in the indictment must be identical"—*held*, that the charge was correct.

---

* See *Pamph L.* 1859, *p.* 367.

State v. Vanderbilt.

This cause was tried at the Warren Oyer and Terminer, and the jury rendered a verdict of guilty. The court suspended sentence, and certified the case to this court for an advisory opinion. The points presented to the court sufficiently appear in the opinion delivered.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH, and WHELPLEY.

*Shipman*, for defendant.

Are the pretences set forth in the indictment within the statute?

The false pretence must be a false token, counterfeit letter, or something *ejusdem generis*. This indictment is not good at common law. *State* v. *Rickey*, 4 *Halst.* 303; *Rex* v. *Wheatly*, 2 *Burr.* 1125; *Queen* v. *Jones*, 1 *Salk.* 380; *People* v. *Stone*, 9 *Wend.* 182; *People* v. *Babcock*, 7 *J. R.* 201; *People* v. *Lambert*, 9 *Cowen* 588; 1 *Bouvier's Law Dict.*, "*Cheat.*"

The token used to effect the cheat must be of a public nature. *Rex* v. *Bower*, *Cowper* 323; *Rex* v. *Bryan*, 2 *Ld. Raymond* 1179; *People* v. *Stetson*, 4 *Barb.* 154; 3 *Chitty's Cr. Law* 995; 2 *Russell on Cr.* 1367 (*ed.* 1834).

Our statute merely uses common law phraseology, applies only to offences indictable at common law, and did not reach privy tokens at all; unless other words had been added, using privy tokens would not have been indictable. The legislature adopted the words pretence or pretences simply to include private tokens. If they had intended to include verbal representations, they would have said false word or words, assertion or declaration: this would have made the meaning clear.

The meaning of "pretence," in common parlance, is not declaration or assertion. *People* v. *Haynes*, 14 *Wend.* 572.

If every false representation is a false pretence, then every fraud in trade and false representation in making a

State v. Vanderbilt.

contract will be indictable, and will come under criminal jurisdiction.

The act was not designed to include verbal pretences. *Commonwealth* v. *Wilgus*, 4 *Pick.* 177 ; *State* v. *Simpson*, 3 *Hawks* 460 ; *McKenzie* v. *State*, 6 *Eng. Rep.* 594 ; *People* v. *Crissie*, 4 *Denio* 530 ; *People* v. *Clough*, 17 *Wend.* 351 ; *People* v. *Thomas*, 3 *Hill* 169 ; *People* v. *Williams*, 4 *Hill* 9.

If mere verbal representations are within the act, they must be such that ordinary skill, care, and prudence would not protect. In this case it was a neighborhood transaction, and the truth could easily have been ascertained.

On the trial, the court instructed the jury that the charge need not be proved in the words of the indictment. It appears, by the evidence, that there were important and material discrepancies. The court should have told the jury that all the averments in the indictment were material, and must be proved as laid ; or, if the state proved less than all, they should show that the representations proved were those upon which credit was given. 1 *Chit. Cr. L.* 192.

*Vliet*, for state.

The question turns on the construction of the statute. It is plain that the legislature intended to include more than a representation by a token or writing. It is clear that the statute includes words, and does not limit the offence to any particular kind of pretences, or to such as would be likely to impose on persons. *People* v. *Johnson*, 12 *J. R.* 292 ; 2 *East's P. C.* 828 ; 3 *Arch. Cr. Pr. and Pl.* 465, *n.* 2.

The law will protect a person of weak mind, as well as strong. *Young* v. *The King*, 3 *T. R.* 98 ; *Wharton's Cr. L.* (4th ed.) §§ 2085–2090.

Our statute is identical in language with 30 *Geo.* 2, except ours is more comprehensive. The New York statute is also the same. There is no longer any doubt about the construction of those statutes or the statute of Pennsyl-

State v. Vanderbilt.

vania. *People* v. *Conger*, 1 *Wheeler's Crim. Cases* 449; *Ibid.* v. *Haynes*, 11 *Wend.* 565; *Ibid.* v. *Kendall*, 25 *Wend.* 399; 3 *Chit. Cr. L.* (5th ed.) 997, 1005, 1007; *Queen* v. *Copeland*, 41 *Eng. C. R.* 283; *Commonwealth* v. *Burdick*, 2 *Barr* 163; *Skiff* v. *People*, 2 *Parker's Cr. R.* 139.

Verbal accuracy is not required in describing the offence, nor is it necessary to negative all the charges, or to prove all. *King* v. *Story, Russell & Ryan* 81; *State* v. *Bell*, 1 *Swan's Tenn. R.* 42; *King* v. *Airy*, 2 *East* 30; *People* v. *Stone*, 9 *Wend.* 182; *People* v. *Haynes*, 11 *Wend.* 557; *S. C.* 14 *Wend.* 546; *King* v. *Barnard*, 7 *Car. & P.* 784.

The opinion of the court was delivered by

OGDEN, J.   The defendants were convicted, in September last, upon an indictment, which substantially contained the following statements and averments. That the prosecutor, one Thomas C. Warman, lived in Washington township, in the county of Warren; that the defendants, who lived in the same township, devising and intending to cheat and defraud the said Warman of his goods, chattels, money, and property, on the 28th of May, 1858, unlawfully, knowingly, designedly, and falsely pretended to him that the said Duckworth was a farmer upon the farm of one Smith, at Asbury, in said county; that he, said Duckworth, had then planted fifty acres of land with corn, and that he had all kinds of farming utensils and stock to carry on the farming business; that the said Vanderbilt was named Peter; that *he* owned ten acres of land near to the village of Asbury, and was the owner of a tavern stand at the village, and was a man of property, substance, and means.   The indictment then, by proper averments, absolutely negatives all the facts set forth in the pretences *seriatim;* and it further avers that the defendants then well knew that all the said pretences were false.   It then concludes with the statement that, by color and means of the said false pretences, the defendants did then and there knowingly, unlawfully, and de-

signedly obtain from the said Warman, of his property, one sorrel mare and one dun mare, together of the value of $100, with intent to cheat and defraud him, &c.

After trial and verdict, the Court of Oyer and Terminer suspended judgment, that the advisory opinion of this court might be taken upon three points reserved by that court.

We are now to decide, in the first place, whether, if all the material facts set forth in the indictment were proved, the defendants can be subjected to punishment under the 53d section of the statute of New Jersey, entitled, "An act for the punishment of crimes."

The whole argument turned upon what is a proper construction of the term "*false pretence or pretences*," which is employed in the section. On the one side, it was contended that the pretence must refer to some *false token of a visible thing*, either public or private, and that mere representations, however false, do not bring the party making them within the statute.

It has been argued, on behalf of the prosecution, that the words "false pretence" mean more than a false token, and include within the penalty of the act some oral representations, where no sign, letter, or token is used. At common law, frauds of this nature are not objects of criminal prosecution, unless they are of a kind calculated to defraud numbers or the public, such as the use of false weights and measures or false tokens which common prudence and care cannot guard against.

To supply the defect of the common law, and to provide punishment for a variety of frauds which were practised, the statute of 33 *H.* 8 was passed, which enacted that if any one should fraudulently get into his possession the goods, chattels, or other things of another, by color of any false privity, token or counterfeit letter, he should suffer the punishment therein prescribed.

The construction given to this statute by the courts left unpunishable frauds perpetrated without the use of some

State v. Vanderbilt.

visible sign or tangible substance, as a token whereby the party parted with his goods upon the credit given to the token; which exemption embraced all cheats and frauds founded on mere oral representations. For the purpose of extending the penalty, the statute of 30 *Geo.* 2, *c.* 24, was passed, in which the term *false pretence or pretences* was first used. That act was superseded by 53d of 7 and 8 *Geo.* 4, *c.* 29, which is as follows: "that if any person shall, by any false pretence, obtain from any other person any chattels, money, or valuable security, with intent to cheat or defraud any person of the same, such person shall be guilty of a misdemeanor, and be punishable," &c. By the section of the act of this state which is now under examination, it is enacted that "all persons who knowingly and designedly, by color of any false token, counterfeit letter, or writing, *or false pretence or pretences*, shall obtain from any person money, wares, merchandise, goods, or chattels, or other valuable thing, with intent to cheat or defraud any person or persons of the same, shall be deemed, on conviction, guilty of a misdemeanor," &c.

The statute of Pennsylvania, passed in 1842, is as follows: "Every person who, with intent to cheat and defraud another, shall designedly, by color of any false token or writing, or by any false pretence whatsoever, obtain from any person any money, personal property, or other valuable thing, upon conviction thereof, shall be punished," &c. The act of the legislature of New York is essentially the same, it using the words *false pretence.*

In settling what should be the proper construction of our statute, we are not left without light, to be derived from the courts in Great Britain and from those of some of our sister states. We are now to fix, not the lexical, but the technical meaning of the expression *false pretence*, when used as legal language, and we may properly look for aid to the reported cases, in which its import has been considered when used in like connection.

It was said by a learned judge of New York, in an

VOL. III.                    x

State v. Vanderbilt.

early case tried there against Conger, that a false pretence must relate to an existing fact. A representation of what will or will not happen cannot be considered as a false pretence: herein, he says, lies the distinction between a false representation and a *false pretence*, the former being promissory in its character, the latter being a representation as to what is then presently untrue.

It was further said in the same case, that the false pretence must be practiced by words written or spoken by the person charged, or by another, and assented to by him; and that no specious false show or appearance will support a prosecution under the statute.

In speaking of the act of *Geo.* 2, Ashurst, J., said, "the legislature saw that all men were not equally prudent, and passed this statute to protect the weaker part of mankind. The words of the statute are very general, and we have no power to restrain their operation."

Grose, J., says, in the same case, "the statute created a new offence, in declaring that all persons obtaining money by *false pretences*, with intent to cheat, shall be offenders against the law and the public peace."

Justice Buller says, "the ingredients of this offence are the obtaining money by false pretences, and with an intent to defraud. If the *intent* be made out, and the false pretences used in order to effect it, the case is brought within the statute." This doctrine was adopted in New York, by Chief Justice Thompson, in the case of The People *v.* Johnson.

But it does not follow, from the foregoing citations, that any improbable lie or absurd or irrational assertion will be sufficient to support an indictment under the statute. The exemption would not apply to such representations, because they are not false pretences, but because no jury would believe that a person of ordinary understanding could be defrauded out of his property by such palpable falsehoods or improbable means. "The pretences must be such to which persons of ordinary caution might give credit."

Frauds are becoming so rife in the community, that a fair interpretation of the statute ought not to be restrained within too narrow lines. " When the criminal law happens to be auxiliary to the law of morality, we should not be anxious to explain it away ;" and " it is safer to adopt what the laws have actually said, than to suppose what they meant to say."

When the act of 1842 first came up for construction before the courts of Pennsylvania, it was decided " that the false pretences in the contemplation of the statute are such as assert the existence of some fact calculated to impose upon a man of common and ordinary caution, which false pretences create the credit given to the accused."

This principle was recognized in the case of the Commonwealth v. Hickey, and in the Commonwealth v. McCrossen. While the meaning of the term " false pretence" was fully declared, it was ruled that any false promise or statement, made with a view of fraudulently obtaining the property of another, will not amount to a false pretence within the meaning of the statute ; but, to constitute an indictable offence, the fraud must be perpetrated by such an artful device as will impose upon a man of ordinary caution. In late years, the English courts have extended the operation of the statute, and the courts in Pennsylvania incline to adopt that more comprehensive exposition of the law, so as to meet the exigencies of society and the better to protect the community against fraud and deception effectuated through false pretences.

In the case of Regina v. Hamilton, the defendant was tried and convicted for falsely pretending, to one Wood, that he was a captain of her majesty's fifth regiment of dragoon-guards, and thereby obtaining an order for the payment of £500, with intent to cheat and defraud the said Wood out of said sum. Lord Denman, after hearing a full argument upon an error assigned, that the pretence set forth in the indictment was not a pretence sufficient in law to support the charge, concurred in the affirmance

of the judgment; observing, "that although they could not perhaps see how such a statement could directly be the means of procuring from the prosecutor an order for £500, but they could *conceive* that it might be so, and the fact *was established* by the verdict." In the case of the *Commonwealth* v. *Drew*, 19 *Pickering* 179, it is held that a *false pretence* within the statute is a representation of some fact or circumstance relating to past, and not to future events, calculated to mislead, *and* which is not true.

It would be difficult, if not impracticable, to lay down any general rule which could govern every case which is within the statute. Many questions of fact must be settled by a jury, such as the character of the pretence used, the credit given to it, the occasion, and the evil purpose sought to be accomplished by the false device, which matters necessarily involve the motives actuating the minds of both parties. The conclusion reached by Judge Parsons, of Pennsylvania, in the case of the Commonwealth v. Poulson, with one qualification, expresses the result of my examination of this statute, and of the decisions in England and in other states of the Union having similar acts. He says, "I think that the principle to be deduced from all the late decisions of the courts in England is this : any pretence sufficient to impose upon the individual to whom it is made, and thereby induce him to part with his property, is an offence within the statute, if the pretence was used with an intent to cheat and defraud, and created *the credit* given to the party ;" and he adds, that it seems to him that the law laid down in England will be the safe and proper rule to be adopted here. This rule, however, should be limited, I think, to such cases as are not absurd and incredible in themselves. My opinion is, that the term *pretence* does not involve the use of a visible token, and that the pretences set forth in this indictment are within our statute.

The second point reserved arises out of the charge of

the court to the jury. It is manifest that the presiding judge entertained the same view of the law of the case that I have already expressed; and as his charge upon it was a declaration of the nature of the pretences necessary to create the offence, and of the effect which they should have produced upon the prosecutor, I have discovered nothing in it which was justly exceptionable. A point was made on the argument that the *allegata* and *probata* did not correspond. It is stated, in the indictment, that Josiah P. Vanderbilt was represented to be a man by the name of Peter Vanderbilt, but that there was no proof of that statement, the testimony, on the contrary, being that he called himself Prall Vanderbilt. There was proof that during the negotiation, he said that he was Vanderbilt, the constable, whom Mrs. Warren testified she had heard was well off.

The judge instructed the jury " that the pretences need not be proved in the precise words laid' in the indictment; that entire verbal accuracy was not required, but that the *idea* conveyed by the defendants and *that* set forth in the indictment must be identical."

This instruction was in accordance with the rules which govern the application of evidence, it not being necessary that all the pretences should be proved as laid, and the jury having found a general verdict of *guilty*, it is to be assumed that they were satisfied that of the pretences set out and negatived in the indictment, sufficient were proved false to subject the defendants to the penalties of a conviction. The Oyer and Terminer should be advised to proceed, and to render the judgment which the statute authorizes.

CITED *in State* v. *Tomlin*, 5 *Dutch.* 20.